UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ERNEST GARLINGTON,
    Plaintiff,

v.

SUSAN CLIFFORD, *et al.*,
    Defendants.

No. 3:17-cv-726 (VAB)

**RULING AND ORDER**

Ernest Garlington ("Plaintiff"), incarcerated at the MacDougall-Walker Correctional Institution in Suffield, Connecticut, and proceeding *pro se*, has sued Susan Clifford and Coldwell Banker Real Estate Agency ("Coldwell Banker") (collectively "Defendants") under 42 U.S.C § 1983 for conspiring to violate his rights under the Fifth, Sixth, and Fourteenth Amendments of the U.S. Constitution and under 42 U.S.C. § 1985.

This ruling addresses a number of filings by the parties in this case. Both Ms. Clifford and Coldwell Banker move to dismiss the Amended Complaint. ECF No. 42, ECF No. 45. Mr. Garlington has moved for the Court to reconsider its Order, dated August 20, 2017, denying his motion to file a second amended complaint and a separate motion for a temporary restraining order. ECF No. 53. Mr. Garlington also has moved to file a second amended complaint. ECF No. 57. Finally, Mr. Garlington has moved for the appointment of counsel, ECF No. 60, and for injunctive relief. ECF No. 61.

For the reasons that follow, the Court **GRANTS** Ms. Clifford's and Coldwell Banker's motions to dismiss. The Court **DENIES** Mr. Garlington's motion to amend and **DENIES** his motions for reconsideration, appointment of counsel, and injunctive relief as moot.

1

I.  **FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND**

   A.  **Factual Allegations**

Mr. Garlington is currently serving a thirty-three year term of incarceration for allegedly conspiring to murder Derek Hopson, the ex-husband of Mr. Garlington's wife. Am. Compl. at 19. Mr. Hopson allegedly married the mother of former professional basketball player Ray Allen. *Id.*

In August of 2005, Ms. Clifford's family friends, the Dolans, allegedly met with Mr. Allen who had expressed interest in purchasing the Dolans' home in Meriden, Connecticut. *Id.* ¶ 4. In October 2006, Ms. Clifford, who is a real estate broker with Coldwell Banker, allegedly met with the Dolans, who had hired her to help sell their waterfront home. *Id.* ¶ 5. Ms. Clifford allegedly stood to gain a commission of over $240,000 and the Dolans would profit two-to-three million dollars, if Ms. Clifford was successful in selling the Dolans' property. *Id.* ¶ 5.

In July 2007, Ms. Clifford's husband, Connecticut Superior Court Judge Patrick Clifford, allegedly was assigned to preside over Mr. Garlington's criminal case. *Id.* ¶ 6. Judge Clifford allegedly is a basketball "fanatic" and is acquainted with Mr. Allen and is closely associated with the Dolans. *Id.* In August 2007, before Mr. Garlington's criminal trial, Mr. Allen allegedly contacted Ms. Clifford to express his continued interest in purchasing the Dolans' home. *Id.* ¶ 8.

In October of 2007, during jury selection for Mr. Garlington's criminal trial, Ms. Clifford allegedly was the subject of a private conversation between Judge Clifford, the prosecuting attorney, and Mr. Garlington's criminal defense attorney, surreptitiously recorded without their knowledge. *Id.* ¶ 9. During this conversation, Judge Clifford allegedly said that Ms. Clifford "better start shaking the money tree" because the Cliffords needed money to pay for their daughters upcoming wedding. *Id.* Allegedly, Mr. Garlington's attorney commented that, if Ms.

Clifford helped sell the Dolans' property to Mr. Allen, the Cliffords could collect the commission for their retirement savings. *Id.*

In November 2007, a jury convicted Mr. Garlington. Before his sentencing, he allegedly hired a Boston law firm to represent him in the criminal matter. *Id.* ¶ 11. Mr. Garlington's attorney allegedly filed motions for Judge Clifford to recuse himself from Mr. Garlington's case and requested the case be tried again, due to the "lack of an appearance of impartiality." *Id.* ¶ 13. In response to the motions, the prosecutor in the matter allegedly submitted documentary evidence supposedly signed by the Dolans, but that allegedly was forged by Ms. Clifford, stating that Ms. Clifford would earn no commission, if she sold the Dolan property. *Id.* ¶ 14.

Mr. Garlington's recusal motion was assigned to Connecticut Superior Court Judge Robert Holzberg. *Id.* ¶ 15. Mr. Garlington asserts that Judge Holzberg was biased against Mr. Garlington because Judge Holzberg had convicted Robert Santos, the person whom Dr. Garlington allegedly hired to murder Mr. Hopson, the subject of Mr. Garlington's criminal matter pending before Judge Clifford. *Id.* Judge Holzberg denied Mr. Garlington's motion. *Id.* ¶ 16.

Judge Clifford allegedly sentenced Mr. Garlington to thirty-three years' incarceration as retaliation for Mr. Garlington having exposed Judge Clifford's financial conflict of interest. *Id.* ¶ 17. Mr. Garlington further alleges that, if Ms. Clifford's alleged act of forgery had been revealed, "the wrongful conviction would have been vacated and Dr. Garlington would be a free, innocent man." *Id.* ¶ 20.

Mr. Garlington alleges that the Connecticut Public Defender Service appointed Theodore Koch to represent Mr. Garlington in his habeas appeal. *Id.* ¶ 21. Mr. Garlington maintains that Ms. Clifford had clandestine telephone conversations with Mr. Koch, during which she allegedly

intimidated, coerced, and colluded with Mr. Koch, resulting in Mr. Koch withdrawing from his representation of Mr. Garlington. *Id.* ¶¶ 21–22. Mr. Koch allegedly sent Mr. Garlington a letter, which stated:

> When I told you I would take your habeas case, I did not know Judge Clifford. Then he was assigned to be the Presiding Judge of New London, and I got to know him from that. I know that you and I have discussed your claims against him, and you have somewhat tamped them down at my advice, but I do not want to restrict you from making as powerful an attack against your conviction as you wish to make. There arises a sense of conflict of interest when I have cases before Judge Clifford in which I am asking him to be as fair to my client as possible, and on the other hand I am accusing him of insidious corruption in a habeas. I don't think he would handle that well, and my trial-level clients may suffer from it. I hope you understand.

*Id.* at 32–33. Mr. Garlington maintains that Mr. Koch's letter demonstrates that the Cliffords and Coldwell Banker met with Mr. Koch to offer him an ultimatum, *i.e.*, either Mr. Koch withdraw his representation of Mr. Garlington or Mr. Koch's "trial level clients may suffer." *Id.* ¶ 24.

Mr. Garlington maintains that Coldwell Banker colluded with Ms. Clifford by enabling Ms. Clifford to forge documents under its seal for the purpose of obstructing the due course of justice. *Id.* ¶ 34.

### B. Procedural Background

Mr. Garlington filed a Complaint with this Court on May 2, 2017, ECF No. 1, and an amended one on June 26, 2017. ECF No. 12. This Amended Complaint is the operative one. Mr. Garlington moved to amend and for a temporary restraining order, which the Court denied on August 10, 2017. ECF Nos. 29, 30.

On August 16, 2017, Ms. Clifford moved to dismiss the Amended Complaint for failure to state a claim. ECF No. 42. Coldwell Banker moved to dismiss on August 17, 2017. ECF No.

45. Consistent with Local Rule 12(a), Defendants duly served Mr. Garlington with a Notice to Self-Represented Litigant Concerning Motion to Dismiss. ECF Nos. 44, 47.

On August 31, 2017, Mr. Garlington moved for reconsideration of the Court's August 16, 2017, Order. ECF No. 53. On December 12, 2017, Mr. Garlington moved to amend the Amended Complaint, for the appointment of counsel, and for special transportation to the Court. ECF Nos. 57, 60–61. This proposed Second Amended Complaint seeks declaratory relief and money damages. Am. Compl. at 12–13.

## II. STANDARD OF REVIEW

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Any claim that fails "to state a claim upon which relief can be granted," Fed. R. Civ. P. 12(b)(6), will be dismissed. In reviewing a complaint under Rule 12(b)(6), a "plausibility standard" is applied, guided by "two working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (internal citations omitted)). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the complaint must contain "factual amplification . . . to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

At this stage of the case, all of the factual allegations in the complaint must be accepted as true. *Iqbal*, 556 U.S. at 678. The factual allegations must also be viewed in the light most favorable to the plaintiff, and all inferences must be drawn in favor of the plaintiff. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also York v. Ass'n of the Bar of the City of New York*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true.").

In addition, a complaint filed by a plaintiff proceeding *pro se* must be construed liberally. *Dolan v. Connolly*, 794 F.3d 290, 293 (2d Cir. 2015). *Pro se* pleadings will be read "to raise the strongest arguments they suggest." *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007). "Even in a *pro se* case, however, 'although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (quoting *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009)). "[W]hen addressing a *pro se* complaint, a district 'court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.'" *Thompson v. Carter*, 284 F.3d 411, 416 (2d Cir. 2002) (quoting *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991)).

## III. DISCUSSION

Mr. Garlington alleges violations of his Fifth, Sixth, and Fourteenth Amendments rights by Ms. Clifford and Coldwell Banker's rights by and through 42 U.S.C. § 1983 and under 42 U.S.C. § 1985. Am. Compl. ¶ 1. Because, as a matter of law, neither Ms. Clifford nor Coldwell Banker are state actors, Mr. Garlington's Section 1983 claims and his claim under Section

1985(3) fail. His claim under Section 1985(2) fails for a different reason: the absence of race or class-based animus.[1]

### A. 42 U.S.C. § 1983

Ms. Clifford and Collwell Banker are the sole defendants in this matter. Am. Compl. § III(1)–(3); *see also id.* § 27 ("Chief Justice [*sic*] Patrick Clifford . . . is not a defendant . . . ."). The essence of Mr. Garlington's claim is that Ms. Clifford and Coldwell Banker conspired to deny him access to his court-appointed attorney, Mr. Koch. Ms. Clifford, through intimidation, blackmail, and machination, allegedly coerced Mr. Koch to withdraw his representation of Mr. Garlangton, thus depriving Mr. Garlington of his constitutional right to counsel and access-to-the courts. The Court finds that Mr. Garlington lacks a viable claim.

"'Because the United States Constitution regulates only the Government, not private parties,' a litigant . . . who alleges that [his] 'constitutional rights have been violated must first establish that the challenged conduct constitutes 'state action.'" *Grogan v. Blooming Grove Volunteer Ambulance Corps*, 768 F.3d 259, 263 (2d Cir. 2014) (quoting *Flagg v. Yonkers Sav. & Loan Ass'n, FA*, 396 F.3d 178, 186 (2d Cir. 2005)). As a corollary to the state-action requirement, "Title 42 U.S.C. § 1983 provides a remedy for deprivations of rights secured by the Constitution and laws of the United States when that deprivation takes place 'under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . .'" *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). The U.S. Supreme Court has provided that "a person acts under color of state law only when exercising power 'possessed by virtue of state law

---

[1] The Court notes that Mr. Garlington has expressly disavowed any notion that the Amended Complaint mounts a collateral attack of his criminal conviction or term of incarceration. Pl.'s Coldwell Banker Opp'n Br. at 5, ECF No. 58.

and made possible only because the wrongdoer is clothed with the authority of state law.'" *Polk Cty. v. Dodson*, 454 U.S. 312, 317–18 (1981).

To prove an action is attributable to the State "a plaintiff must establish both that [the] alleged constitutional deprivation [was] caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible, *and* that the party charged with the deprivation [is] a person who may fairly be said to be a state actor." *Grogan v. Blooming Grove Volunteer Ambulance Corps.*, 768 F.3d 259, 263–64 (2d Cir.2014) (citations and internal quotation marks omitted). The latter inquiry requires proof that "there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Id.* at 264 (internal quotation marks and citations omitted).

At the pleading stage, a plaintiff need not conclusively prove state action but must plausibly allege that it occurred by relying on more than "vague and conclusory" statements. *White v. Monarch Pharm., Inc.*, 346 Fed. App'x. 739, 741 (2d Cir.2009) (citation omitted) (dismissing a Section 1983 complaint for failing to plausibly allege state action); *Spear v. Town of West Hartford*, 954 F.2d 63, 68 (2d Cir. 1992) (citation omitted) (same); *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002) ("A merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity.") (citation omitted).

The Second Circuit has instructed that the fair attribution analysis must begin by identifying the "specific conduct of which the plaintiff complains, rather than the general characteristics of the entity." *Grogan*, 768 F.3d at 264 (internal quotation marks and citations

omitted). From there, the determination of whether there is state action is a "matter of normative judgment" that requires the Court to examine the totality of the circumstances.

"Several tests have been devised by the Supreme Court" to determine whether a private party's actions constitute state action under the Fourteenth Amendment. *Giannattasio v. Stamford Youth Hockey Ass'n, Inc.*, 621 F. Supp. 825, 826 (D. Conn. 1985). A court may find that state action occurred if "the State creates the legal framework governing the conduct; if it delegates its authority to the private actor; or sometimes if it knowingly accepts the benefits derived from unconstitutional behavior." *Nat'l Coll. Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 192 (1988); *see also* Martin A. Schwartz, *Section 1983 Litigation: Claims & Defenses* § 5.12 (4th ed.2015) (noting five tests have been used to determine whether state action exists: the symbiotic relationship test, the pervasive entwinement test, the public function test, the close nexus test, and the joint action test).

As it must, the Court assumes all facts to be true. Mr. Garlington does not assert that Ms. Cifford or Caldwell Banker acted as agents of the State of Connecticut. Nor could he plausibly do so. Indeed, he has alleged that Ms. Clifford acted out of personal financial interest, not on behalf of the State of Connecticut. *See, e.g.*, Am. Compl. ¶ 3 ("Mrs. Clifford's commission would be over $240,000 . . . .").[2] Instead, he alleges that Judge Clifford and Mr. Koch are state actors and therefore introduce state action into this case. But Judge Clifford and Mr. Koch are

---

[2] The role of Coldwell Banker in this narrative is even more attenuated. Mr. Garlington alleges that Coldwell Banker colluded with Ms. Clifford by allowing her to create forged documents under its name. Am. Compl. ¶ 32. The forged documents allegedly were offered by Ms. Clifford to show that Judge Clifford had no conflict that would preclude him from sentencing Mr. Garlington. *Id.* § 14. Mr. Garlington's criminal conviction and sentencing, however, are not before the Court.

not parties to this case. As a result, there is no state action and the constitutional claims brought through Section 1983 must be dismissed.

**B.     42 U.S.C. § 1985(2)**

Section 1985(2), in relevant part, prohibits conspiracies to "imped[e] . . . the due course of justice . . . with intent to deny to any citizen the equal protection of the laws, or to injure him . . . for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws." 42 U.S.C. § 1985(2); *see also Johns v. Home Depot U.S.A., Inc.*, 221 F.R.D. 400, 406 (S.D.N.Y. 2004) (identifying this clause as "impos[ing] liability for interference with state judicial proceedings" as opposed to the first provision that applies to federal proceedings).

This provision requires a plaintiff to allege "(1) a conspiracy between two or more persons, (2) to deter a witness by force, intimidation or threat from attending court or testifying freely in any pending matter, which (3) results in injury to the plaintiff." *Chahal v. Paine Webber Inc.*, 725 F.2d 20, 23 (2d Cir. 1984). The statute requires "that conspirators' actions be motivated by an intent to deprive their victims of equal protection of the laws," and "has been interpreted to mean that plaintiff must allege discriminatory racial, ethnic, or class-based animus motivating the conspirators' action[s]" in order to state a claim. *Khan v. City of New York*, No. 14-cv-4665 (SLT) (VMS), 2016 WL 1128298, at *7 (E.D.N.Y. Feb. 1, 2016), *adopted by*, 2016 WL 1192667 (E.D.N.Y. Mar. 21, 2016) (internal quotation marks omitted); *see also Keating v. Carey*, 706 F.2d 377, 385 (2d Cir. 1983) (explaining that the relevant provision of Section 1985(2) "makes it unlawful to obstruct the course of justice in state courts with the intent to deny to any citizen the equal protection of the laws" language that in Section 1985(3) the Supreme Court has held

10

requires a plaintiff to allege "some racial, or perhaps otherwise class-based invidiously discriminatory animus behind the conspirators' action[s]" (internal quotation marks omitted)).

Dr. Garlington does not allege that either Ms. Clifford or Coldwell Bankers acted because of race or class-based animus. Again, as noted above, Mr. Garlington asserts that Ms. Clifford acted out of personal financial interest. *See, e.g.*, Am. Compl. ¶ 3 ("Mrs. Clifford's commission would be over $240,000 . . . ."). Furthermore, Mr. Garlington has not alleged that the state has deprived him of an attorney, and thus any possible conspiracy between Defendants and Mr. Koch, and the Court has found none, has failed to "[r]esult[] in injury to the plaintiff." *Chahal*, 725 F.2d at 23.

Mr. Garlington therefore fails to state a viable claim under Section 1985(2) and this claim must be dismissed.

### C. 42 U.S.C. § 1985(3)

Section 1985(3) provides an action for damages caused by "two or more persons" who conspire to deprive someone of equal protection of the laws, so long as one person takes an act in furtherance of the object of the conspiracy. 42 U.S.C. § 1985(3). To allege a Section 1985(3) claim, a plaintiff must plead "(1) a conspiracy, (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the law, or of equal privileges and immunities under the law; and (3) an act in furtherance of the conspiracy, (4) whereby a person is either injured in his person or property or deprived of any right of privilege of a citizen of the United States."*Rini v. Zwirn*, 886 F. Supp. 270, 290 (E.D.N.Y. 1995) (citing *United Bhd. of Carpenters & Joiners, Local 610 v. Scott*, 463 U.S. 825, 828–29, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983)).

11

Despite the "two or more persons" language in the statute, which indicates that the statute may reach purely private conduct, the Second Circuit, consistent with Supreme Court precedent, has recognized that "a conspiracy to deny equal protection in violation of the Fourteenth Amendment [under Section 1985(3)] is not actionable in the absence of state action." *Edmond v. Hartford Ins. Co.*, 27 Fed. App'x. 51, 53 (2d Cir. 2001) (citing *United Bhd. of Carpenters & Joiners, Local 610*, 463 U.S. at 831–32). Since the Fourteenth Amendment itself requires state action, a Section 1985(3) action claiming a conspiracy to violate the Equal Protection Clause of the Fourteenth Amendment also requires state action. *United Bhd. of Carpenters & Joiners, Local 610,* 463 U.S. at 832–33. To make out a § 1985(3) claim, it is necessary for a plaintiff to allege facts, that, if proven true, would show the state was "somehow involved in or affected by the conspiracy." *Id.* at 833.

Because state action is required to state a claim under Section 1985(3) and Ms. Clifford and Coldwell Bankers are not state actors, for the reasons discussed above under § 1983 claim, Mr. Garlington has failed to plausibly allege state action. *See Lugar v. Edmondson Oil Co., * 457 U.S. 922, 929 (1982) (holding that Section 1983's "under color of state law" requirement and the "state action" required under the Fourteenth Amendment are "identical"). The Court therefore will dismiss Mr. Garlington's under § 1985(3).

Having dismissed Mr. Galington's claims under § 1983, 1985(2), and 1985(3), the Court does not, and need not, reach Defendants' other arguments.

### D. The Proposed Second Amended Complaint

Mr. Garlington proposes bringing Mr. Koch and various other public defenders into this case in his proposed Second Amended Complaint. *See* ECF No. 57. Because the Court has already granted Mr. Garlington leave to amend his Complaint once and the proposed Second

Amended Complaint fails to remedy any of the legal deficiencies addressed above, Mr. Garlington's motion to amend is denied. *See Williams v. Citigroup Inc.*, 659 F.3d 208, 214 (2d Cir. 2011) (*per curiam*) ("Leave to amend need not be granted where the proposed amendment would be futile."); *Roth v. CitiMortgage Inc.*, 756 F.3d 178, 183 (2d Cir. 2014) (citing *Williams*); *see also Leonelli v. Pennwalt Corp.*, 887 F.2d 1195, 1199 (2d Cir. 1989) (finding futility and denying appellant's motion to amend where neither of two were fiduciaries of the pension plan at issue within the meaning of the Employment Retirement Income Security Act); *MacPherson*, 2010 WL 3081278, at *4 (finding futility where plaintiff did not alleged that the credit reporting agency notified the defendant bank that reported information was disputed and therefore there was no private right of action the FCRA). In denying the Second Amended Complaint on futility grounds, the Court finds that, as a matter of law, neither Mr. Koch nor any other public defenders he seeks to sue are state actors.

In *Dodson*, the U.S. Supreme Court addressed the question of whether a criminal defense attorney performs a function that has traditionally been the province of the state and recognized that, within the American legal system, "[i]t is often said that lawyers are 'officers of the court." *Id.* Nonetheless, a lawyer representing a client does not, by virtue of being a so called officer of the court, act under color of law within the meaning of § 1983. *Id.* Indeed, a criminal defense attorney "characteristically opposes the designated representatives of the State. The system assumes that adversarial testing will ultimately advance the public interest in truth and fairness." *Id.*

Central to this proposition is the notion that, in our system of laws, "a defense lawyer best serves the public, not by acting on behalf of the State or in concert with it, but rather by advancing 'the undivided interests of his client." *Id.* 318–19. A criminal defense attorney, in

essence serves a private function, one traditionally provided by retained counsel, "for which state office and authority are not needed." *Id.* at 319. In *Gideon v. Wainwright*, 372 U.S. 335 (1963), the Court established the state criminal defendant's right to "the guiding hand of counsel at every step in the proceedings against him." *Id.* at 345. "Implicit in the concept of a 'guiding hand' is the assumption that counsel will be free of state control." *Dodson*, 454 U.S. at 322.

Here, none of Mr. Garlington's factual allegations in the proposed Second Amended Complaint distinguish this case from *Dodson*. Mr. Garlington asserts that Mr. Koch's withdrawal deprived Mr. Garlington of his constitutional right to counsel. Am. Compl ¶ 20. But Mr. Koch did not act on behalf of the State of Connecticut when doing so. *See Dodson*, 454 U.S. at 319 (reasoning that the client-attorney relationship was not created or sustained by state authority). Thus, if, in fact, Mr. Garlington suffered an injury, it was not under the color of law. Mr. Garlington also has not alleged that the State of Connecticut failed to appoint him new counsel. As a result, any alleged impact Ms. Clifford may have had on Mr. Garlington's attorney-client relationship with Mr. Koch was purely private in nature.

Because none of Mr. Garlington's factual allegations allow for an inference that Mr. Koch was acting under color of law, Mr. Garlington has failed to allege that Mr. Koch's actions can be fairly attributed to the State of Connecticut. As a result, any Section 1983 claim involving Mr. Koch or any other public defender would have to be dismissed and it would be futile for this Court to grant leave for Mr. Garlington to file the proposed Second Amended Complaint.

## IV. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Ms. Clifford's motion to dismiss and **GRANTS** Coldwell Banker's motion to dismiss.

The Court **DENIES** Mr. Garlington's motion to amend and **DENIES** his motions for reconsideration, appointment of counsel, and injunctive relief as moot.

The Court instructs the Clerk of the Court to enter judgment in favor of Ms. Clifford and Coldwell Banker and to close this case.

**SO ORDERED** at Bridgeport, Connecticut, this 24th day of March, 2018.

    /s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE